# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SIBEL EDMONDS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1623 (RMU) |
| | : | | |
| | : | | |
| | : | Document Nos.: | 10, 14 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, Sibel Edmonds, brings this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of Justice ("DOJ") to produce documents concerning the defendant's investigative report of the plaintiff's allegations of misconduct in the translation services at the Federal Bureau of Investigation ("FBI"). Before the court is the plaintiff's motion for partial summary judgment and the defendant's motion for partial summary judgment. Because the defendant provided adequate justification for withholding the documents under the national security exemption to FOIA, and because the defendant has not previously disclosed the required information, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's motion for partial summary judgment.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff performed translation services for the FBI as a contract linguist from September 2001 through March 2002.  Compl. ¶ 5.  On March 7, 2002, the plaintiff filed an administrative complaint with the DOJ, alleging numerous administrative and legal violations committed by FBI employees at her office.  *Id.* ¶ 6.  The DOJ conducted an investigation in response to the plaintiff's complaint.  As part of this investigation, on April 25, 2002, and November 13, 2002, the DOJ interviewed the plaintiff, *id.* ¶ 7, and in mid-March 2003, the DOJ interviewed the plaintiff's husband, *id.* ¶ 13.  Based on these interviews, the DOJ generated five documents: (1) a Memorandum of Interview ("MOI") dated April 25, 2002; (2) a transcript of the April 25, 2002 MOI; (3) an MOI dated November 13, 2002; (4) a transcript of the November 13, 2002 MOI; and (5) an audio-tape recording of the November 13, 2002 interview.[1]  Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 3 (Hardy Decl.) ¶ 3.

### B.  Procedural Background

During the DOJ's investigation, on March 22, 2002, the FBI terminated the plaintiff's employment contract.  On July 22, 2002, the plaintiff filed an employment discrimination case alleging unlawful termination and unlawful release of private information in violation of the First Amendment and the Privacy Act, respectively.  *Edmonds v. U.S. Dep't. of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004)*, aff'd*, No. 04-39 (D.C. Cir. May 6, 2005).  The district court dismissed that

---

[1]     The plaintiff's attorney did not attend a classified interview held by the United States Department of Justice ("DOJ") on June 21, 2002. Def.'s Mot. Summ. J. ("Def.'s Mot."), Ex. 1 (Sheehan Decl.) ¶ 3.  The plaintiff does not challenge the FBI's withholding of the Memorandum of Interview ("MOI") that resulted from this interview.

case, holding that the Attorney General properly invoked the state secrets privilege. *Edmonds*, 323 F. Supp. 2d at 76.

Having failed to gain access to documents pertaining to her employment at the FBI in *Edmonds*, 323 F. Supp. 2d 65, the plaintiff filed a lawsuit on April 27, 2002, against the FBI pursuant to FOIA and the Privacy Act seeking the same or similar documents related to her employment with the FBI. *Edmonds v. F.B.I.*, 272 F. Supp. 2d 35 (D.D.C. 2003) (Huvelle, J.). That court found that the FBI's "declarations, coding systems, and classified index describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* at 59 (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)). Judge Huvelle granted the government's motion for summary judgment on its assertion of Exemption 1 of FOIA as grounds for withholding certain documents. *Id.* at 45-49 (noting that Exemption 1 protects from mandatory disclosure matters that are "specifically authorized by an [Executive Order, ("E.O.")] to be secret in the interest of national defense or foreign policy" and are "properly classified" pursuant to such an Executive Order). The court also rejected the plaintiff's argument that the information withheld was already in the public domain through disclosures to the news media and FBI briefings to the U.S. Congress. *Id.* at 48.

On September 22, 2004, the plaintiff filed the instant action to compel the DOJ to release the complete investigative report regarding her allegations, as well as other relevant records. Specifically, the plaintiff seeks the records created as part of the DOJ's investigation, which the defendant claims are exempt from disclosure. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 1.

3

The plaintiff argues that the FBI "officially released unclassified information, some of which it now claims was retroactively classified." Pl.'s Reply to Def's Mot. ("Pl.'s Reply") at 8. The plaintiff also argues that none of the information that she discussed during the April 25, 2002 meeting can be considered classified because neither of her lawyers possessed security clearances, "a fact that the FBI and DOJ were aware of prior to their participation in the meeting." Pl.'s Mot. at 2. The defendant, on the other hand, asserts that the MOIs from the April 25 and November 13, 2002 interviews, and the November 13, 2002 interview transcript are classified and must be withheld in their entirety because they contain national security information.[2] Def's Mot. for Summ. J. ("Def.'s Mot.") at 4. The defendant also claims that the court in *Edmonds v. F.B.I.*, 272 F. Supp. 2d 35, has determined that the same information contained in the documents the plaintiff now seeks was properly classified. *Id*. at 2. Following this court's order for briefing on the ability of the DOJ to invoke Exemption 1 to FOIA, the parties filed motions for partial summary judgment. It is to these motions that the court now turns.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

[2]    National Security is defined in Executive Order ("E.O.") 12,958, § 1.1 as "the National Defense or foreign relations of the United States."

4

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact.  *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157-59 (1970).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA.  5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance.  *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

The court may grant summary judgment to an agency on the basis of its affidavits if they: [(a)] describe the documents and the justifications for nondisclosure with

> reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project*, 656 F.2d at 738.  While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith.  *SafeCard Servs., Inc. v. Sec. Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents."

## B.  Exemption 1

### 1.  Legal Standard For Exemption 1 Withholding

Exemption 1 of FOIA exempts from mandatory disclosure matters that are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy" and (2) "are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Information "must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms" to be properly withheld under Exemption 1.  *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980).  An agency that withholds information pursuant to this exemption bears the burden of justifying its decision.  *King. v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987) (citing 5 U.S.C. § 552(a)(4)(B)).  Under E.O. 12,958, an agency may not classify information unless, *inter alia*, "the disclosure of the information reasonably could be expected to result in damage to the national security."  E.O. 12,958, *as amended*, § 1.2(a)(4).

Courts review challenges to an agency's decision to withhold information *de novo*.  *King*, 830 F.2d at 217; 5 U.S.C. § 552 (a)(4)(B).  The court will conduct an *in camera* review if the

agency's affidavits are insufficient to respond to *de novo* determination.  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384-88 (D.C. Cir. 1987).  In reviewing an agency's invocation of an exemption, the court must consider that in enacting FOIA, Congress aimed to strike a balance "between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole."  *ACLU v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152-53 (1989)).

The court is to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."  *Military Audit Project*, 656 F.2d at 738 (deferring to the agency's assertions in holding that the information could cause serious damage to the national security); *see also Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982).  This is especially true "in a national security case, in which the agency possesses necessary expertise to assess the risk of disclosure," *Schlesinger v. CIA*, 591 F. Supp. 60, 67 (D.D.C. 1984), and judges "lack the expertise necessary to second-guess . . . agency opinions."  *Halperine v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (deferring to the agency's opinion and holding that certain CIA affidavits provided ample evidence to show plausible potential harm under a limited *de novo* review).

If the court finds that the agency's affidavits are insufficiently detailed, it denies summary judgment in Exemption 1 cases on procedural grounds.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 31 (D.C. Cir. 1998) (remanding to the district court to allow the FBI to further "justify" its Exemption 1 claim because its declaration failed to "draw any connection between the

documents at issue and the general standards that govern the national security exemption"), *on*

*remand*, 193 F. Supp. 2d 29, 38 (D.D.C. 2001) (finding a declaration insufficient when it merely

concluded, without further elaboration, that "disclosure of [the] information could reasonably be

expected to cause serious damage to national security"); *Oglesby v. U.S. Dep't of the Army*, 79

F.3d 1179, 1180 (D.C. Cir. 1996) (rejecting certain *Vaughn* indexes insufficient because agencies

must itemize each document and adequately explain "the connection between the information

withheld and the exemption claimed"); *Oglesby*, 920 F.2d at 66 n. 12 (noting the degree of

specificity required in public *Vaughn* affidavits, especially in regard to an agency's obligation to

segregate and release nonexempt material); *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d

3, 15, 26-27 (D.D.C. 1998) (reserving judgment on Exemption 1 claims of the CIA and the FBI,

and ordering new affidavits because the court found the agency's *Vaughn* indexes insufficient to

permit the court to engage in a proper evaluation); *Keenan v. Dep't of Justice*, No. 94-1909, slip

op. at 8-11 (D.D.C. 1997) (holding that a mere recitation of an E.O.'s language, without

information about the contents of withheld information, was an insufficiently coded *Vaughn*

index).

## 2. The Defendant Properly Invoked Exemption 1 to FOIA.

The defendant asserts that the information withheld falls within Exemption 1 of FOIA.

Def.'s Mot. at 2.  David M. Hardy, the Section Chief of the Record/Information Dissemination

Section, Records Division, of the FBI, sets forth the FBI's reasons for classifying the information

in his signed and sworn declaration, stating that the FBI currently uses:

> the intelligence activities and methods detailed in the withheld information and the
> activities and methods . . . to gather, store or disseminate information.  The
> information obtained from these activities and methods is very specific in nature,
> provided during a specific time period, and known to very few individuals.

8

> Disclosure of the specific information . . . could reasonably be expected to cause serious damage to the national security and disclosure would in turn severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

Hardy Decl. ¶ 11.

Hardy identified and described the potential damage of disclosure. Hardy Decl. ¶ 10, 13-17. According to his sworn statement, release of the MOIs of the April 25, 2002 and November 13, 2002 interviews, and the transcript of the November 13, 2002 interview could reasonably be expected to cause damage to the national security after considering the DOJ's April 25, 2002, June 21, 2002, and November 13, 2002 interviews with the plaintiff. *See* Hardy Decl. ¶ 4, 20. He stated that "the specific information . . . describ[ing] the intelligence activities . . . [is] still used by the FBI today to gather intelligence [and] could reasonably be expected to cause serious damage to the national security and disclosure would in turn severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws." Hardy Decl. ¶ 17.

In *Halperine*, the D.C. Circuit found similar language sufficient to sustain the government's burden. In that case, the CIA stated that if the names of its attorneys were revealed, "representatives of hostile, foreign intelligence services working in this country [could] by a variety of techniques . . . undertake courses of action to ascertain . . . other contacts [or] other locations, and then arrive at determinations whether [the attorney] is doing any other function for the [CIA]." *Halperine*, 629 F.2d at 149. In the instant case, Hardy's sworn statement describing how the plaintiff's counsel's notes could be compared to any redacted

transcript of the MOIs is equally specific and detailed.[3]  Hardy describes the information

classified in this case as containing "information on the activity or method used against a targeted

individual or organization that has been determined to be of national security interest."  Hardy

Decl. ¶ 16.  He also asserted that "intelligence activities and methods detailed in the withheld

information are currently used by the FBI to gather store or disseminate intelligence

information."  Hardy Decl. ¶ 17.  In the context of Exemption 1, this declaration merits

"substantial weight."  *King*, 830 F.2d at 217; *Military Audit Project*, 656 F.2d at 737.  Hardy's

explanation for the invocation of Exemption 1 is that the FBI must withhold the transcript and

the two MOIs in their entirety and one MOI in part because no reasonably segregable portion

could be declassified and disclosed.  Hardy Decl. ¶  4.  The court rules that the defendant has

sustained its burden by providing a "relatively detailed" declaration.  *King*, 830 F.2d at 224.

The plaintiff suggests that the affidavits portray the FBI's or DOJ's bad faith and conflict

with the rest of the record.  Pl.'s Mot. at 3.  Specifically, the plaintiff asserts that the DOJ

reviewed "classified documents" with her although the FBI "was well aware of their [sic]

requirements to protect classified information from inadvertent or deliberate disclosure in

violation of the law."  *Id.*  The plaintiff asserts that if the information was considered classified

throughout the investigation of her allegations of misconduct at the FBI, one must assume "such

a high degree of gross incompetence and security violations by numerous government officials

that is beyond reasonable."  Pl.'s Mot. at 6 n.4.  The plaintiff also suggests that the DOJ's

assertion that the information discussed during the November 12, 2002 interview is classified

---

[3]    The court in *Edmonds v. FBI*, 272 F. Supp. 2d 35 (D.D.C. 2003) reviewed the
classified portions of the declaration and ruled that the FBI properly withheld
documents pertaining to the plaintiff's employment pursuant to Exemption 1.

reveals "such a gross level of incompetence and breakdown of security that even for Washington, D.C. insiders it would be unthinkable." Pl.'s Mot. at 8.

The court disagrees with the plaintiff's suggestion of bad faith withholdings and with the plaintiff's idiomatic reading of classification procedures.  The D.C. Circuit has conclusively declined to find subsequent disclosures as evidence of bad faith in analogous circumstances reasoning that, "[E.O.] 12,065 expressly provides for classification at times later than the origination of the documents."[4] *Lesar*, 636 F.2d at 484 (holding that "belated classification of certain documents" relating to the assassination of Dr. Martin Luther King, Jr., was insignificant and "did not undermine" the agency's decision to classify such investigatory records compiled for law enforcement purposes as exempt from disclosure under FOIA exemption for a matter authorized to be kept secret by an executive order in the interest of national defense of foreign policy); *see e.g., Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) (finding agency's affidavits sufficiently detailed to support Exemption 1 withholding and determining that subsequent release of some previously classified information was not in bad faith).  The principle that an agency's inadvertent disclosure does not undermine classification, *Lesar,* 636 F.2d at 485, applies here as well, and the DOJ's disclosure of Edmond's records to plaintiff's counsel does not constitute a declassification.

### 3.  Waiver of the Exemption 1 Assertion

The plaintiff argues that the DOJ or the FBI waived the right to claim Exemption 1.  Pl.'s Reply at 8.  The defendant asserts to the contrary that the Attorney General properly classified the

---

[4]     E.O. 12,065 was in effect at the time of *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980).

information under E.O. 12,958, and that no such waiver occurred.  Def.'s Mot., Ex. 1 (Sheehan Decl.) ¶ 3; Hardy Decl. ¶ 4, 8.

### a.  Legal Standard for Waiver of Exemption 1

For information to be "officially acknowledged" such that the agency has waived its right to invoke Exemption 1, the information sought must: (1) be as "specific" as the information previously released; (2) "match" the information previously disclosed; and (3) have been made public through an "official and documented" disclosure.  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001) (holding that a prior release of photographs similar to those withheld does not waive Exemption 1 because the fact that "some information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations") (quoting *Fitzgibbon*, 911 F.2d at 766).

In asserting a claim of prior public disclosure, a FOIA plaintiff bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (1983); *see Assassination Archives Research Ctr. v. CIA*, 334 F.3d 55, 60 (D.C. Cir. 2003) (holding that a FOIA plaintiff must show that previously disclosed information duplicates withheld material to establish waiver of an exemption); *see also James Madison Project v. NARA*, No. 0205089, 2002 WL 31296220, at 1 (D.C. Cir., Oct. 11, 2002) (affirming that the "party claiming that public disclosure prevents the withholding bears the burden of showing that the specific information at issue has been officially disclosed").

To analyze whether a prior disclosure has occurred, the court must carefully distinguish between bona fide declassified action and official release on the one hand and unsubstantial speculation lacking official confirmation on the other. *Afshar*, 702 F.2d at 1131. Furthermore, the court does not consider classified information to be in the public domain unless it has been officially disclosed. *Phillippi v. CIA*, 655 F.2d 1325, 1332 (D.C. Cir. 1985) (concluding that a disclosure by a former Director of the CIA did not result in waiver and reasoning that "without the disclosure of the documents demanded by [the plaintiff], foreign analysts remain in the dark as to the providence of the information appearing in the published reports"); *Nat's Sec. Archive v. CIA*, No 99-1160, slip op. at 12-13 (D.D.C. July 31, 2000) (ruling that Exemption 1 can be waived only through "the stamp of truth that accompanies official disclosure").

### b. The FBI did not Waive its Ability to Assert Exemption 1.

The plaintiff claims that the FBI or the DOJ disclosed the information in the documents prior to their classification and thus the DOJ is "denied" the ability to claim Exemption 1 "as a matter of law." Pl.'s Mot. at 2, 7. Specifically, the plaintiff argues that the information was unclassified at the time of the meeting and remains unclassified. Alternatively, she argues that the information was classified and has been declassified or that some or all the information was classified before the meeting, deemed declassified for the meeting and was later reclassified. *Id.* Hardy denies that the FBI or the DOJ has publicly declassified the information and cautions that because the plaintiff's counsel's notes could be compared to the redacted transcript of the MOIs, it is likely that such a comparison would reveal some, if not all, of the information properly classified in that case. Hardy Decl. ¶ 20. Hardy asserts that much of the same information withheld in this case was withheld in *Edmonds v. FBI*, 272 F. Supp. 2d 35 (D.D.C. 2003). Hardy

13

Decl. ¶ 18.  In that case, the court held that the FBI's disclosure of information to a congressional committee did not constitute a waiver of Exemption 1 of FOIA.  *Edmonds v. FBI*, 272 F. Supp. 2d at 48.  Although this court cannot be sure that the information in that case constitutes the precise information withheld in this case, the court's decision in *Edmonds v. FBI*, 272 F. Supp. 2d 35 (D.D.C. 2003) provides a framework for this court to assess the defendant's invocation of Exemption 1 over the information at issue here.

The plaintiff argues that because her uncleared attorney participated in the November 13, 2002 meeting, the defendant is precluded from invoking Exemption 1 "as a matter of law."  Pl.'s Mot. at 2, 7.  Her argument is unconvincing.  In *Assassination Archives Research Ctr.*, the D.C. Circuit ruled that the CIA's prior disclosure of information on Cuban operatives under the Kennedy Assassination Records Collection Act did not moot or waive its claim that a compendium of information on "Cuban Personalities" was exempt from disclosure under FOIA on the ground that it could reveal confidential intelligence sources and methods, absent a showing that the information in the compendium had already been revealed.  *Id.,* 334 F.3d at 60. Just as the compendium of information could reveal confidential intelligence sources and methods in *Assassination Archives Research Ctr.*, the collection of MOIs, transcripts, audiotape, and plaintiff counsel's notes in this case could reveal information relevant to the methods and activities of the FBI's translation service.  *See* § III (B)(2) infra.

However, a FOIA plaintiff must show that an agency's previous disclosure "appears to duplicate" the material sought*, Afshar*, 702 F.2d at 1130, that is, that the disclosed material is "as specific as" and "match[es]" the material sought.  *Assassination Archives Research Ctr.*, 334 F.3d at 60 (citing *Fitzgibbon*, 911 F.2d at 765).

14

To highlight how specific the showing must be under *Afshar*, in *Davis v. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992), the DOJ resisted disclosure of tape recordings made during a criminal investigation of a reputed mafioso. *Id.* at 1278. Although the DOJ conceded waiver as to the tapes played at trial and agreed to release tapes for which the plaintiff could provide trial transcripts, the D.C. Circuit held that the plaintiff's reliance on newspaper stories that generally referred to the tapes did not meet the specificity required. *Id.* at 1280. The court emphasized that the plaintiff had to show "the exact portions" of the tapes that were played. *Id.* In *Davis,* the court also noted that as a practical matter, waiver under *Afshar* yields the FOIA plaintiff little new information. *Id.* Indeed, if a plaintiff can establish that the specific records she seeks have become "freely available, there would be no reason to invoke FOIA to obtain access to the information." *Id.* (quoting *U.S. Dep't of Justice v. Reported Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989)).

Likewise, this court rejects the plaintiff's argument because her logic would require the court to decide that agency affidavits alone are insufficient in an Exemption 1 withholding solely because the plaintiff believes her counsel possesses a duplication of the classified material in the form of her interview notes. The plaintiff cites no authority upon which to support her assertion that an agency waives the protections of Exemption 1 merely by making the information public to a counsel in an interview or a similar circumstance.

The plaintiff also fails to make a showing of the specific classified portions of the MOI and the agency's alleged disclosure. Furthermore, unlike the defendants in *Afshar*, the defendant here conceded no waiver. The court notes that the FBI has not declassified or reclassified information relating to the plaintiff's cases. Hardy Decl. ¶ 9. The plaintiff failed to meet her

burden of citing specific information that appears to be duplicated by the interviews and the recording. *Afshar*, 702 F.2d at 1130; *James Madison Project*, 2002 WL 31296220 at 1 (affirming that the "party claiming that public disclosure prevents withholding the same information bears the burden of showing that the specific information at issue has been officially disclosed").

The FBI states that to reveal the information would impair its methods and activities of gathering information. Def.'s Mot. at 4. This is by no means an illogical or implausible assertion. This court must respect the expertise of the agency and stay within the proper limits of the judicial role in FOIA review. Whatever revelations the DOJ made to the plaintiff's counsel neither undercut the government's affidavits in this case nor hinder the DOJ's ability to assert Exemption 1 over the information. To argue that the FBI or the DOJ must be "denied" the ability to invoke Exemption 1 of FOIA "as a matter of law" is to ignore the factual record and the case law. For these reasons, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's motion for partial summary judgment.[5]

---

[5]     In the alternative, the defendant asserts the state secrets protection. The government invokes the military and state secrets privilege when it makes "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). The court need not engage in a new analysis of the DOJ's invocation of the state secrets privilege because the DOJ has satisfied the FOIA Exemption 1 standard. *See* § III (B)(2), infra. Also, the district court has affirmed the Attorney General's invocation of the state secret privilege for the same or at least substantially the same information in *Edmonds*, 323 F. Supp. 2d at 73 (holding that "the Attorney General has complied with the necessary prerequisites for formal invocation of the state secrets privilege").

### c.  The DOJ has Shown that Disclosure of the Information at Issue
### would Jeopardize Nation Security and Reveal State Secrets

The defendant asserts that although the withheld information, taken in its parts, may not

be classified, when taken together, it creates a body of information that illuminates a "mosaic" of

classified information.  Def.'s Mot. at 4.  The DOJ and the FBI contend that the information

forms a "mosaic" of classified information about the methods and activities still used by the FBI

to gather intelligence.  *Id*.  A "mosaic" of information forms when, "[t]housands of bits and

pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with

startling clarity how the unseen whole must operate."  *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir.

1978) (holding that the Secretary of Defense's assertion that certain information, which "would

severely jeopardize the intelligence collection mission of [the National Security Agency]," was

sufficient to sustain a claim of privilege).  The Supreme Court has recognized that "[w]hat may

seem trivial to the uninformed, may appear of great moment to one who has a broad view of the

scene and may put the questioned item of information in its proper context."  *CIA v. Sims*, 471

U.S. 159, 178 (1985) (holding that the Director of the CIA has power to withhold superficially

innocuous information on the grounds that it might enable an observer to discover the identity of

an intelligence source); s*ee also Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice*, 331 F.3d

924 (D.C. Cir. 2003) (applying the mosaic theory in an analogous FOIA case where the

information at issue was a list of names of persons detained for investigation into the September

11, 2001 attacks compiled for law enforcement and investigation purposes).

The defendant's classification based on a "mosaic" theory comports with this legal

framework.  When combined with plaintiff counsel's notes of the November 13, 2002 meeting,

the five government-withheld documents could prove useful for identifying information

gathering methods and activities within the FBI's translation services, though each piece existing in its discrete informational orbital would lack valence.  Furthermore, the court will not conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinions of the agency.  *Halperine*, 629 F.2d at 148.  Because judges lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case, the court declines to do so here.

The court is satisfied that the government has met its burden by submitting a declaration from an appropriately qualified official attesting to the basis of the agency's decision.  *See Pub. Citizen*, 276 F.3d at 645 (finding the agency's affidavits sufficiently detailed to support an Exemption 1 withholding and determining that the subsequent release of some previously classified information was not evidence of bad faith), *see also King*, 830 F.2d at 217 (holding that an agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision).  Further, the court in *Edmonds*, 323 F. Supp. 2d at 75, reviewed the Attorney General's classified declaration, *in camera*, and determined that there was a reasonable danger that revelation of classified information would expose intelligence-gathering methods or capabilities and damage foreign relations.  The court is mindful that Congress intended FOIA to strike a balance "between the right of the public to know what their government is up to" and the "interest that the government maintains in keeping certain information private."  *ACLU*, 265 F. Supp. 2d at 27.  In this instance, that balance has been struck.

**IV.  CONCLUSION**

For all the foregoing reasons, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's cross-motion for partial summary judgment.  An order directing the parties in the manner consistent with this Memorandum Opinion is separately and contemporaneously issue this 19th day of December, 2005.


RICARDO M. URBINA
United States District Judge